# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21931-Civ-WILLIAMS/TORRES

VASILA QUEEN,

    Petitioner,

v.

STATE FARM MUTUAL INSURANCE COMPANY,

    Respondent.

_____/

## ORDER ON MOTION TO QUASH SUBPOENA

This matter is before the Court on Vasila Queen's ("Ms. Queen") motion to quash two non-party subpoenas that Defendant served in May 2019. [D.E. 1]. State Farm Mutual Insurance Company ("State Farm") responded to Ms. Queen's motion on June 4, 2019 [D.E. 4] to which Ms. Queen replied on June 21, 2019. [D.E. 7]. Therefore, Ms. Queen's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and relevant authority, and for the reasons discussed below, Ms. Queen's motion is **DENIED**.

### *I.  BACKGROUND*

Ms. Queen filed a motion on May 13, 2019 [D.E. 1] to quash two non-party subpoenas that were issued in *State Farm Mutual Automobile Ins. Co., et al. v. Parisien et al.*, No. 1:18-cv-00289-ILG (E.D.N.Y.) (the "Underlying Action"), a civil case currently pending in the United States District Court for the Eastern District of New York. The Underlying Action includes allegations of a fraud-derived

1

racketeering enterprise in Brooklyn, New York that occurred in a clinic where physicians, chiropractors, acupuncture therapists, and medical sources providers submitted bills to State Farm for treatments to automobile accident claimants. State Farm alleges that these treatments were medically unnecessary, ineligible for reimbursement, and/or never occurred.

One of the issues in the Underlying Action is whether non-physicians owned and controlled the Brooklyn clinic, directed patient treatment, and siphoned the proceeds of the treatment to themselves. If laypersons owned and controlled the healthcare corporations, those corporations are ineligible under New York law for the reimbursement of healthcare services and their claims for payment are deemed fraudulent. And any evidence that laypersons obtained the proceeds of the professional corporations constitutes proof of lay ownership and control.

Discovery has revealed that, during the alleged conspiracy period, many of the defendants in the Underlying Action made large payments to businesses and individuals connected to a non-physician layperson named Tatiana Rybak ("Ms. Rybak"). One of Ms. Rybak's associates is Ms. Queen who owns a nail and hair salon located at the Trump International Hotel in Miami, Florida. State Farm claims that bank records show that 15 different healthcare providers, who worked at the clinic, wrote at least 70 checks either payable to Ms. Queen directly or payable as cash into Ms. Queen's bank account. These deposits occurred over a six-year period between February 2012 and February 2018, totaling $100,000. None of

the checks were for amounts over $10,000 and, in some instances, large cash withdrawals were made from Ms. Queen's bank account shortly after the deposit.

After reviewing these bank records, State Farm deposed several former employees. But, those employees invoked their Fifth Amendment right to self-incrimination and refused to answer questions related to specific payments. State Farm then served Rule 34 requests to defendants in the Underlying Action and requested that they produce any documents related to the payments to Ms. Queen. Yet, the documents requested are not in defendants' possession, custody, or control. Given the suspicious nature of these transactions and the unlikelihood that a New York healthcare provider would send unsolicited payments to a Miami nail salon owner, State Farm issued a subpoena to Ms. Queen to discover the purpose of these payments and determine the relationship that she has with the clinic.

Following several unsuccessful attempts to serve Ms. Queen with a subpoena, State Farm was finally successful on March 27, 2019. The subpoena commanded Ms. Queen to appear for a deposition on April 24, 2019 and to bring with her certain documents. At the request of Ms. Queen's attorney, State Farm agreed to reschedule the deposition to a date and location convenient to Ms. Queen, her lawyer, and her Russian interpreter. On May 7, 2019, State Farm served two new subpoenas, one seeking responsive documents within 14 days and the other directing Ms. Queen to appear for a deposition on May 30, 2019. Rather than comply with the subpoenas, Ms. Queen filed a motion to quash because the discovery sought is irrelevant and it otherwise constitutes an undue burden.

## II. APPLICABLE PRINCIPLES AND LAW

Federal Rule of Civil Procedure 45 provides that a subpoena must be modified or quashed if it "requires disclosure of privileged or other protected matter" or "subjects a person to [an] undue burden." Fed. R. Civ. P. 45(c)(3); *see also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817–18 (5th Cir. 2004) ("Under Federal Rule of Civil Procedure 45, a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden.") (footnote omitted). "Whether a burdensome subpoena is reasonable 'must be determined according to the facts of the case,' such as the party's need for the documents and the nature and importance of the litigation." *Wiwa*, 392 F.3d 818 (quoting *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998)).

To determine whether a subpoena imposes an undue burden, courts must consider at least six factors:

> (1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Wiwa*, 392 F.3d at 818. As part of this inquiry, "[a] trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering

4

quashing a subpoena on grounds of oppressiveness. It must carefully examine the circumstances presented to it and, when appropriate, consider the possibility of modifying the subpoena rather than quashing." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

"Rule 26(c) allows the issuance of a protective order if 'good cause' is shown. In addition to requiring good cause, this circuit has also required the district court to balance the interests of those requesting the order. A 'district court must articulate its reasons for granting a protective order sufficient for appellate review.'" *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989) (citations omitted); *see also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005) ("Rule 26(c) provides that upon a showing of good cause, a court 'may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.' The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order.") (citations omitted).

"A non-party seeking a protective order has the initial burden of showing that the information sought is confidential and that the disclosure of that information might be harmful. Once the non-party has established both prongs, the party seeking to compel the disclosure must show that the discovery sought is both relevant to the pending action and necessary." *Coty Inc. v. C Lenu, Inc.*, 2010 WL

5392887, at *3 (S.D. Fla. Dec. 22, 2010) (citing *American Standard, Inc. v. Humphrey,* 2007 WL 1186654, at *2–3 (M.D. Fla. Apr.19, 2007) (noting that "the party resisting discovery . . . has the burden to show that the information sought by [the p]laintiff is confidential and that disclosure would be harmful" and that "[o]nly after such a showing is made does the burden shift to the party seeking the discovery to show the information sought is relevant and necessary.")) (citations omitted).

It is well settled that "[t]he litigant seeking the protective order must articulate the injury with specificity." *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999) (citations omitted*); see also United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (finding that a party seeking a protective order must show not just speculative harm but must make a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements") (citations omitted); *see also United States v. Dentsply Int'l, Inc.,* 187 F.R.D. at 158 ("'Broad allegations of harm, unsubstantiated by specific examples,' do not support a showing for good cause.") (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)). "In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection" because "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (citing *Cipollone*

*v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)); *see also Gen. Dynamics Corp. v. Selb Mfg. Corp.,* 481 F.2d 1204, 1212 (8th Cir. 1973).

### III. ANALYSIS

On May 13, 2019, Ms. Queen filed a motion to quash two non-party subpoenas because State Farm has no right to investigate her transactional history with the defendants in the Underlying Action. Ms. Queen argues that her history of prior transactions is irrelevant and that her receipt of funds has nothing to do with State Farm's allegations of fraud. Indeed, Ms. Queen maintains that she has never provided health care services in the medical industry and that she does not have any involvement in an insurance scam that was based on billing insurance companies for unnecessary medical treatments. Ms. Queen suggests that State Farm relies on nothing than a hunch that criminal activity is afoot and that, without more, State Farm is not entitled to intrude on her personal life. Accordingly, Ms. Queen seeks to quash the non-party subpoenas because they lack any relevance and impose an undue burden.

Ms. Queen's motion lacks merit because the discovery sought is relevant as to whether the defendants in the Underlying Action used Ms. Queen as part of a conspiracy to siphon money from a healthcare clinic in violation of state and federal law. Ms. Queen argues, on the other hand, that she has never provided health care services in the medical industry and cannot have any involvement in an insurance scam. But, Ms. Queen misses the whole point of the discovery sought. State Farm does not allege that Ms. Queen provided medical services. Instead, State Farm has

7

evidence that Ms. Queen has been in receipt of more than $100,000 dollars from individuals who are believed to have submitted fraudulent medical bills to State Farm for treatments that were unnecessary, ineligible for reimbursement, and/or never occurred.

Notably, Ms. Queen's attempts to distance herself as an irrelevant non-party witness do more harm than good. If Ms. Queen is so distant from the medical profession, it raises the question as to why a Miami nail salon owner is in receipt of substantial sums of money from medical providers. While it is certainly possible that there is a legitimate explanation for Ms. Queen's involvement, it is within the scope of discovery to explore these payments given the allegations and evidence presented. In other words, the discovery sought is relevant because it may establish who owns and controls the defendants in the Underlying Action and the scope of the alleged conspiracy. And Ms. Queen's contention that the subpoenas subject her to an undue burden is equally unavailing because it is entirely conclusory. *See, e.g., Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 WL 3419420, *3 (S.D. Fla. Aug. 27, 2010) ("As the party moving to quash the subpoena, SSI must show the subpoena subjects it to undue burden."). We therefore conclude that the discovery sought is relevant and that Ms. Queen's motion to quash must be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Ms. Queen's motion to quash is **DENIED**. Ms. Queen shall comply with the subpoenas within seven (7) days from the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of August, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge